**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LINKEDTO PARTNERS LLC, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| DEFI TECHNOLOGIES INC., OLIVIER ROUSSY NEWTON, PAUL BOZOKI, and STEFAN HANSSEN, | |
| Defendants. | |

Plaintiff Linkedto Partners LLC ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding DeFi Technologies Inc. ("DeFi Technologies" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired DeFi Technologies

securities between May 12, 2025 and November 14, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      DeFi Technologies purports to be a technology and digital asset treasury ("DAT") company that develops exchange traded products in Canada that synthetically track the value of a single decentralized finance ("DeFi") protocol—that is, a set of standards and rules that govern a system of lending, borrowing, and trading a cryptocurrency—or a basket of DeFi protocols.  The Company also offers asset management services, such as indirect exposure to underlying digital assets, digital asset indexes, or other DeFi instruments.  As a DAT company, part of DeFi Technologies' operations include accumulating cryptocurrency assets.

3.      The Company was formerly known as Valour Inc. ("Valour") and changed its name to DeFi Technologies Inc. in July 2023.  DeFi Technologies was incorporated in 1986 and is headquartered in Toronto, Canada.  Today, one of the Company's subsidiaries bears the legacy name Valour.

4.      DeFi Technologies' five business segments include, *inter alia*, DeFi Alpha, which the Company's website describes as "a specialized arbitrage trading desk . . . designed to identify and capitalize on low-risk arbitrage opportunities within the cryptocurrency market."  Arbitrage is a strategy that attempts to profit from discrepancies between prices of the same asset across multiple exchanges.

5.      At all relevant times, DeFi Technologies reassured investors that DeFi Alpha consistently drives Company revenues.  To date, the Company's website states that DeFi Alpha's

"primary focus on both centralized and decentralized markets . . . ensures minimal exposure to market and protocol risks, ***effectively mitigating revenue volatility***."[1]

6.     Indeed, throughout the Class Period, the Company highlighted arbitrage trades by DeFi Alpha and revenues these trades generated.  DeFi Technologies repeatedly stated that "[t]he Company ***continues to assess and execute on arbitrage opportunities through*** . . . ***DeFi Alpha***."

7.     At the outset of the Class Period, just two days after its stock was listed on the Nasdaq Stock Market ("NASDAQ"), DeFi Technologies reported its financial results for the first quarter of 2025, touted the supposed advantages of DeFi Alpha, and announced it was "projecting full-year 2025 revenue of approximately C$285.6 million (US$201.07 million)—***a meaningful increase from [its] 2024 results and a clear signal of [its] accelerating growth trajectory***."

8.     On August 14, 2025, DeFi Technologies reported its financial results for the second quarter of 2025.  Among other representations, the press release again touted the supposed advantages of DeFi Alpha and the Company's "continue[d] . . . execut[ion]" on DeFi Alpha's arbitrage opportunities.  The press release also quoted DeFi Technologies' Chief Executive Officer ("CEO") Defendant Olivier Roussy Newton ("Newton") as announcing an increase to the Company's full-year 2025 revenue guidance to US$218.6 million.

9.     On September 25, 2025, DeFi Technologies announced the pricing of an oversubscribed $100 million direct offering (the "Offering"), pursuant to which several well-known institutional investors agreed to purchase an aggregate of 45,662,101 of the Company's common shares, as well as warrants to purchase up to an additional 34,246,577 common shares, at a combined purchase price of $2.19 per share and three-quarters of one warrant.  The following

---

[1] All emphases herein are added unless otherwise stated.

day, DeFi Technologies announced that it had completed the Offering for gross proceeds to the Company of $100 million before certain agent fees and other Offering expenses.

10.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) DeFi Technologies was facing delays in executing its DeFi arbitrage strategy, which at all relevant times was a key revenue driver for the Company; (ii) DeFi Technologies had understated the extent of competition it faced from other DAT companies and the extent to which that competition would negatively impact its ability to execute its DeFi arbitrage strategy; (iii) as a result of the foregoing issues, the Company was unlikely to meet its previously issued revenue guidance for the fiscal year 2025; (iv) accordingly, Defendants had downplayed the true scope and severity of the negative impact that the foregoing issues were having on DeFi Technologies' business and financial results; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

11.     On November 6, 2025, DeFi Technologies issued a press release purporting to report an arbitrage trade by DeFi Alpha.  The press release disclosed, *inter alia*, that "[DAT]s have absorbed or delayed a significant share of arbitrage opportunities over the past year."

12.     On this news, DeFi Technologies' stock price fell $0.13 per share, or 7.43%, to close at $1.62 per share on November 6, 2025.

13.     Then, on November 14, 2025, DeFi Technologies issued a press release reporting its financial results for the third quarter of 2025.  Among other items, DeFi Technologies reported a revenue decline of nearly 20%, falling well short of market expectations.  The Company also significantly lowered its 2025 revenue forecast, from $218.6 million to approximately $116.6 million, and attributed this reduction to "a delay in executing DeFi Alpha arbitrage opportunities

previously forecasted due to the proliferation of [DAT] companies and the consolidation in digital asset price movement in the latter half of 2025."

14.     Concurrently, DeFi Technologies announced that Defendant Newton would leave his role as CEO and assume an advisory position.

15.     Following these disclosures, DeFi Technologies' stock price fell $0.40 per share, or 27.59%, over the following two trading sessions, to close at $1.05 per share on November 17, 2025.

16.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

17.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

19.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Plaintiff is a resident of this District.  Moreover, per DeFi Technologies' most recent quarterly financial statements filed with the SEC on Form 6-K, as of November 12, 2025, there were more than 385 million of the Company's common shares outstanding.  DeFi Technologies' common shares trade in the U.S. on the NASDAQ.  Accordingly, in addition to Plaintiff, there are presumably hundreds, if not thousands, of investors in DeFi

Technologies' common shares located in the U.S., some of whom, like Plaintiff, undoubtedly reside in this District.

20.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

21.     Plaintiff, as set forth in the attached Certification, acquired DeFi Technologies securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

22.     Defendant DeFi Technologies is organized under the laws of Ontario, Canada, with principal executive offices located at Suite 2400, 333 Bay Street, Toronto, Ontario, Canada M5H 2T6.  The Company's common shares trade in an efficient market on the NASDAQ under the ticker symbol "DEFT".

23.     Defendant Newton served as DeFi Technologies' CEO at all relevant times.

24.     Defendant Paul Bozoki ("Bozoki") has served as DeFi Technologies' Chief Financial Officer at all relevant times.

25.     Defendant Stefan Hanssen ("Hanssen") has served as the Chief Investment Officer of DeFi Technologies' subsidiary Valour at all relevant times.

26.     Defendants Newton, Bozoki, and Hanssen are collectively referred to herein as the "Individual Defendants."

27.     The Individual Defendants possessed the power and authority to control the contents of DeFi Technologies' SEC filings, press releases, and other market communications.

The Individual Defendants were provided with copies of DeFi Technologies' SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with DeFi Technologies, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

28.     DeFi Technologies and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

29.     DeFi Technologies purports to be a technology and DAT company that develops exchange traded products in Canada that synthetically track the value of a single DeFi protocol or a basket of DeFi protocols.  The Company also offers asset management services, such as indirect exposure to underlying digital assets, digital asset indexes, or other DeFi instruments.  As a DAT company, part of DeFi Technologies' operations include accumulating cryptocurrency assets.

30.     The Company was formerly known as Valour Inc. and changed its name to DeFi Technologies Inc. in July 2023.  DeFi Technologies was incorporated in 1986 and is headquartered in Toronto, Canada.

31.     DeFi Technologies' five business segments include, *inter alia*, DeFi Alpha, which the Company's website describes as "a specialized arbitrage trading desk . . . designed to identify and capitalize on low-risk arbitrage opportunities within the cryptocurrency market."

32.     At all relevant times, DeFi Technologies reassured investors that DeFi Alpha consistently drives Company revenues.  To date, the Company's website states that DeFi Alpha's "primary focus on both centralized and decentralized markets . . . ensures minimal exposure to market and protocol risks, effectively mitigating revenue volatility."

33.     Since as early as June 3, 2024, DeFi Technologies has touted its DeFi Alpha segment's ability to consistently drive revenues.  On that date, DeFi Technologies issued a press release touting revenues driven by DeFi Alpha's "low-risk arbitrage trades", stating *inter alia*:

> DeFi Technologies . . . a financial technology company that pioneers the convergence of traditional capital markets with the world of [DeFi], is pleased to announce announces [*sic*] its new business line DeFi Alpha, a specialized arbitrage trading desk, has generated an additional C\$59.2 million (US\$43.4 million) from low-risk arbitrage trades. In its first few months, DeFi Alpha has come off to a promising start, generating approximately C\$113.8 million (US\$83.4 million) . . . .

> DeFi Alpha's sole focus is to identify low-risk arbitrage opportunities within the crypto ecosystem . . . .

> The DeFi Alpha trading desk is strategically designed to focus on identifying and capitalizing upon arbitrage opportunities within the dynamic digital assets market. Utilizing advanced algorithmic strategies and in-depth market analysis, the trading desk aims to generate alpha by exploiting inefficiencies and discrepancies in digital asset pricing. ***The primary focus is on arbitrage trading opportunities in both centralized and decentralized markets, ensuring minimal market or protocol exposure to mitigate downside revenue volatility***.

34.     On May 5, 2025, one week before its common shares began trading on the NASDAQ, DeFi Technologies issued a press release touting a purported \$22 million return from one DeFi Alpha arbitrage trade, quoting Defendant Newton as stating *inter alia*:

> The continued performance of DeFi Alpha reflects our disciplined approach to identifying actionable opportunities in the digital asset space. The C\$30.3 million (US\$22 million) return from a single trade underscores the strength of our infrastructure and team, and reinforces our focus on delivering shareholder value through innovative, risk-mitigated strategies. We believe DeFi Alpha is well-positioned to be a recurring driver of revenue as we capitalize on evolving market conditions, make use of our existing [exchange traded protocols ("ETPs")], and continue expanding our product suite.

35.    In addition, the press release stated, *inter alia*:

DeFi Alpha is DeFi Technologies' proprietary trading desk focused on capturing low-risk arbitrage opportunities across digital asset markets. Using advanced algorithmic strategies and deep market analytics, DeFi Alpha identifies pricing discrepancies in digital assets and executes trades with minimal market exposure. The desk operates across both centralized and decentralized exchanges, optimizing liquidity capture while limiting downside volatility.

The Company continues to actively evaluate additional arbitrage opportunities as market volatility increases and its diversified digital asset product suite—particularly through its Valour ETP business—creates favorable conditions for strategic and repeatable alpha generation. Both existing and newly launched Valour products open up additional opportunities for DeFi Alpha to generate consistent returns, making it an increasingly important part of the Company's overall revenue strategy.

**Materially False and Misleading Statements Issued During the Class Period**

36.    The Class Period begins on May 12, 2025, when DeFi Technologies' common shares began trading on the NASDAQ.  During pre-market hours that day, the Company issued a press release announcing its NASDAQ listing, which quoted Defendant Newton as stating, in relevant part:

This Nasdaq listing marks a historic moment—not just for DeFi Technologies, but for the broader digital asset industry. We are proud to be the first company of our kind to offer equity investors direct exposure to decentralized finance, institutional-grade trading infrastructure, and dozens of the world's most innovative digital assets. This milestone reinforces our commitment to making the decentralized economy more accessible to traditional investors.

37.    On May 14, 2025, DeFi Technologies issued a press release reporting its financial results for the first quarter of 2025 (the "Q1 2025 Press Release").  Among other representations, the Q1 2025 Press Release stated:

***DeFi Alpha, our proprietary trading strategy, has maintained an unblemished track record.*** It delivered C$132.1 million (US$96.7 million) in gains in 2024 with zero losses to date and announced a C$30.3 million (US$22 million) trade based on the market price at the time of execution on May 5, 2025, which will be reflected in our Q2 results.

38.     The Q1 2025 Press Release also touted the supposed advantages of DeFi Alpha, the Company's specialized, arbitrage-focused trading desk, and its "proven" status as a "pivotal driver of DeFi Technologies' financial resilience":

> **The DeFi Alpha strategy has proven to be a pivotal driver of DeFi Technologies' financial resilience**, enhancing the Company's position in an ever-evolving digital asset landscape.  Through its arbitrage-focused approach, DeFi Alpha has strengthened the Company's financial foundation, enabling debt repayment while supporting the deployment of a robust digital asset treasury strategy.  **This strategic model has proven effective in mitigating risks while maximizing returns, even in the face of market volatility**.

39.     The Q1 2025 Press Release also included DeFi Technologies' revenue guidance for the 2025 fiscal year, quoting Defendant Newton as stating in relevant part: "[b]ased on our performance and market trends, we are projecting full-year 2025 revenue of approximately C$285.6 million (US$201.07 million)—**a meaningful increase from our 2024 results and a clear signal of our accelerating growth trajectory**."

40.     Also on May 14, 2025, DeFi Technologies filed a report of foreign issuer on Form 6-K with the SEC (the "Q1 2025 6-K"), appended to which as exhibits were the Company's financial statements for the first quarter of 2025, including, *inter alia*, "Management's Discussion & Analysis for the three months ended March 31, 2025" (the "Q1 2025 MD&A").  The Q1 2025 MD&A further attested to the purported strength of the Company's financial outlook, stating in a section dedicated to discussing the same, in relevant part, that "[t]he Company's global expansion positions the Company for long-term growth, leveraging strategic partnerships, market-first advantages, and increasing investor demand to strengthen its market leadership."

41.     Also appended as exhibits to the Q1 2025 6-K were signed certifications pursuant to Ontario Securities Commission ("OSC") regulations, wherein Defendants Newton and Bozoki certified, in relevant part, that the Q1 2025 MD&A "do[es] not contain any untrue statement of a

material fact or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, with respect to the period covered by the" Q1 2025 MD&A; and that "having exercised reasonable diligence, the interim financial report together with the other financial information included in the[, *inter alia*, Q1 2025 MD&A] fairly present in all material respects the financial condition, financial performance and cash flows of the issuer, as of the date of and for the periods presented in the" Q1 2025 MD&A.

42.    On May 27, 2025, DeFi Technologies issued a press release entitled "DeFi Technologies Reaffirms US$201.07 Million 2025 Revenue Guidance; Maintains Position as Largest Institutional Asset Manager of Solana in North America and Third Largest in Europe." Among other representations, the press release stated in relevant part: "***The Company confirms its C$285.6 million (US$201.07 million) revenue forecast for fiscal 2025***, clarifying that it excludes non-operational accounting adjustments related to previously acquired locked Solana and Avalanche tokens."

43.    On June 3, 2025, DeFi Technologies issued a press release including an intra-quarter update for the second quarter of 2025.  Among other representations, the press release again touted the supposed advantages of DeFi Alpha and the Company's "continued" execution on arbitrage opportunities it presented, referencing a trade executed one month earlier:

> ***The Company continues to assess and execute on arbitrage opportunities through its specialized trading desk, DeFi Alpha.*** Since its launch in Q2 2024, DeFi Alpha has generated a total of C$162.4 million (US$118.8 million) in revenue, including a one-time arbitrage trade announced on May 5, 2025, that delivered C$30.3 million (US$22 million). ***This strategy has significantly strengthened the Company's financial position***, enabling debt repayment and supporting the ongoing expansion of its digital asset treasury.

> Recent Strategic Developments from May include:

DeFi Technologies Reports a Return of C$30.3 Million (US$22 Million) From an Arbitrage Trade by DeFi Alpha

DeFi Technologies reported a one-time return of approximately C$30.3 million (US$22 million) from an arbitrage trade executed by its specialized trading desk, DeFi Alpha. The return will be reflected in the Company's Q2 2025 financial statements, strengthening its overall liquidity position. *This strategic execution underscores DeFi Alpha's ability to capitalize on market inefficiencies* and reinforces DeFi Technologies' commitment to disciplined trading strategies that deliver shareholder value.

44.     On August 14, 2025, DeFi Technologies issued a press release reporting its financial results for the second quarter of 2025 (the "Q2 2025 Press Release").  Among other representations, the press release again touted the supposed advantages of DeFi Alpha and, crucially, the Company's "continue[d] . . . execut[ion]" on DeFi Alpha's arbitrage opportunities:

DeFi Alpha Performance: On May 5, 2025, the Company announced a significant trade totaling returns of US$17.3 million, incorporating a non-cash DLOM [discount for lack of marketability] valuation adjustment. *For the twelve months ended December 31, 2024, DeFi Alpha generated C$132.1 million (US$96.7 million) in trading gains, with zero losses to date* . . . .

*The Company continues to assess and execute on arbitrage opportunities through its specialized trading desk, DeFi Alpha.* Since its launch in Q2 2024, DeFi Alpha has generated a total of C$155.9 million (US$114.1 million) in revenue, including a one-time arbitrage trade announced on May 5, 2025, that delivered a return of C$23.8 million (US$17.3 million), incorporating a non-cash DLOM valuation adjustment. *This strategy has significantly strengthened the Company's financial position*, enabling debt repayment and supporting the ongoing expansion of its digital asset treasury.

45.     The Q2 2025 Press Release also touted DeFi Alpha's "proven" status as a "pivotal driver" of the Company's "financial resilience" and its "strategic edge in the market", stating *inter alia*:

*The DeFi Alpha strategy has proven to be a pivotal driver of DeFi Technologies' financial resilience*, enhancing the Company's position in an ever-evolving digital asset landscape. Through its arbitrage-focused approach, DeFi Alpha has strengthened the Company's financial foundation, enabling debt repayment while supporting the deployment of a robust digital asset treasury strategy. *This strategic*

*model has proven effective in mitigating risks while maximizing returns, even in the face of market volatility.*

Strategic Focus and Competitive Edge: ***DeFi Alpha was designed to capitalize on the Company's balance sheet through both systematic and opportunistic trading strategies. The approach uniquely positions DeFi Alpha to take advantage of market opportunities while leveraging its balance sheet advantages.*** Many of the trades pursued are exclusive, backed by strong partnerships and significant holdings tied to ETPs, making these opportunities largely inaccessible to other firms. ***This exclusivity, combined with efficient execution in low-competition areas, is what gives DeFi Alpha its strategic edge in the market.***

46.     The Q2 2025 Press Release also quoted Defendant Newton as announcing an increased annualized operating revenue guidance for the fiscal year 2025, while claiming that DeFi Alpha was "firing on all cylinders" and "continues to originate high-conviction, low-risk opportunities" for the Company, stating *inter alia*:

***Q2 2025 was proof that our model executes in a softer market*** . . . .  The flywheel is turning—each business line is reinforcing the others and compounding momentum . . . .  ***DeFi Alpha continues to originate high-conviction, low-risk opportunities***—highlighted by a US$17.3 million trade in May . . . .  ***We are still early in our growth story, but our businesses are firing on all cylinders, delivering immediate results while compounding long-term value. Backed by a well-capitalized cash and digital-asset treasury, a deepening institutional base, and a robust pipeline, we've raised our 2025 annualized operating revenue guidance to US$218.6 million***. The focus from here is clear—keep executing, keep compounding, and keep building.

47.     Also on August 14, 2025, DeFi Technologies filed a report of foreign issuer on Form 6-K with the SEC (the "Q2 2025 6-K"), appended to which as exhibits were the Company's financial statements for the second quarter of 2025, including, *inter alia*, "Management's Discussion & Analysis for the three and six months ended June 30, 2025" (the "Q2 2025 MD&A"). The Q2 2025 MD&A continued to attest to the purported strength of the Company's financial outlook, stating in a section dedicated to discussing the same, in relevant part, that "[t]he Company's global expansion positions the Company for long-term growth, leveraging strategic

partnerships, market-first advantages, and increasing investor demand to strengthen its market leadership."

48.     Also appended as exhibits to the Q2 2025 6-K were substantively the same OSC certifications as referenced in ¶ 41, *supra*, signed by Defendants Newton and Bozoki.

49.     The statements referenced in ¶¶ 36–48 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) DeFi Technologies was facing delays in executing its DeFi arbitrage strategy, which at all relevant times was a key revenue driver for the Company; (ii) DeFi Technologies had understated the extent of competition it faced from other DAT companies and the extent to which that competition would negatively impact its ability to execute its DeFi arbitrage strategy; (iii) as a result of the foregoing issues, the Company was unlikely to meet its previously issued revenue guidance for the fiscal year 2025; (iv) accordingly, Defendants had downplayed the true scope and severity of the negative impact that the foregoing issues were having on DeFi Technologies' business and financial results; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

50.     On September 25, 2025, DeFi Technologies announced the pricing of an oversubscribed $100 million direct Offering, pursuant to which several well-known institutional investors agreed to purchase an aggregate of 45,662,101 of the Company's common shares, as well as warrants to purchase up to an additional 34,246,577 common shares, at a combined purchase price of $2.19 per share and three-quarters of one warrant.  The following day, DeFi Technologies announced that it had completed the Offering for gross proceeds to the Company of $100 million before certain agent fees and other Offering expenses.

**The Truth Begins to Emerge**

51.     Less than two months after the Offering, on November 6, 2025, during pre-market hours, DeFi Technologies issued a press release purporting to report an arbitrage trade by DeFi Alpha (the "November 2025 Press Release"). The November 2025 Press Release disclosed, *inter alia*, that "[DAT]s have absorbed or delayed a significant share of arbitrage opportunities over the past year."

52.     On this news, DeFi Technologies' stock price fell $0.13 per share, or 7.43%, to close at $1.62 per share on November 6, 2025. Despite this decline in DeFi Technologies' stock price, the Company's securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions concerning, *inter alia*, the Company's ability to meet its previously issued revenue guidance for the fiscal year 2025.

53.     For example, the November 2025 Press Release quoted Defendant Hanssen as stating, *inter alia*, that DeFi Alpha's latest arbitrage trade "***reinforces our confidence in DeFi Alpha's ability to generate non-correlated returns and capture value in all market conditions***." The November 2025 Press Release further stated, *inter alia*:

> DeFi Alpha is DeFi Technologies' proprietary trading desk focused on capturing low-risk arbitrage opportunities across digital asset markets. Leveraging a disciplined execution framework and deep connectivity across the digital asset ecosystem, DeFi Alpha identifies and executes on pricing dislocations with minimal market exposure. ***Through its emphasis on risk management and capital efficiency, the desk has proven its ability to generate reliable, non-correlated performance regardless of broader market direction.***
>
> ***The Company continues to actively evaluate additional arbitrage opportunities as market volatility increases and its diversified digital asset product suite, particularly through its Valour ETP business, creates favorable conditions for strategic and repeatable alpha generation.*** Both existing and newly launched Valour products open up additional opportunities for DeFi Alpha to generate

consistent returns, making it an increasingly important part of the Company's overall revenue strategy.

54.     The statements referenced in ¶¶ 51 and 53 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) as a result of the delays that DeFi Technologies faced in executing its DeFi arbitrage strategy, the extent of competition DeFi Technologies faced from other DAT companies, and the extent to which that competition would negatively impact its ability to execute its DeFi arbitrage strategy, the Company was unlikely to meet its previously issued revenue guidance for the fiscal year 2025; (ii) accordingly, Defendants had downplayed the true scope and severity of the negative impact that the foregoing issues were having on DeFi Technologies' business and financial results; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

## **The Truth Continues to Emerge**

55.     On November 13, 2025, during post-market hours, DeFi Technologies issued a press release reporting its financial results for the third quarter of 2025.  Among other items, DeFi Technologies reported a revenue decline of nearly 20%, falling well short of market expectations. The Company also significantly lowered its 2025 revenue forecast, from $218.6 million to approximately $116.6 million, and attributed this reduction to "a delay in executing DeFi Alpha arbitrage opportunities previously forecasted due to the proliferation of [DAT] companies and the consolidation in digital asset price movement in the latter half of 2025":

> Based on current performance, digital asset price levels and market trends, the Company's annualized revenue for 2025 is forecasted at approximately $116.6 million. ***The reduction of the Company's annualized revenue forecast for 2025 from $218.6 million is primarily due to a delay in executing DeFi Alpha arbitrage***

*opportunities previously forecasted due to the proliferation of [DAT] companies and the consolidation in digital asset price movement in the latter half of 2025.*

56.     Concurrently, DeFi Technologies announced that Defendant Newton would leave his role as CEO and assume an advisory position.

57.     Following these disclosures, DeFi Technologies' stock price fell $0.40 per share, or 27.59%, over the following two trading sessions, to close at $1.05 per share on November 17, 2025.

58.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## Regulation S-K Items 105 and 303

59.     Throughout the Class Period, DeFi Technologies' periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations.  Specifically, Item 105 of SEC Regulation S-K, 17 CFR § 229.105 ("Item 105"), required DexCom to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain how each risk affects the [Company] or the securities being offered."  Defendants failed to disclose, *inter alia*, the true scope and severity of the risks posed by DeFi Technologies' delays in executing its arbitrage strategy through DeFi Alpha, and by the competition that DeFi Technologies faced from other DAT companies.  Defendants' failure to disclose the foregoing issues violated Item 105 because these issues represented material factors that made an investment in the Company speculative or risky.

60.     For similar reasons, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required DeFi Technologies to "[d]escribe any

known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants failed to disclose, *inter alia*, that DeFi Alpha was facing delays in executing its DeFi arbitrage strategy, the extent of competition it faced from other DAT companies, and the extent to which that competition would negatively impact its ability to execute its DeFi arbitrage strategy. Defendants' failure to disclose the foregoing issues violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

## SCIENTER ALLEGATIONS

61.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  For example, during the Class Period, while disseminating the materially false and misleading statements alleged herein to maintain artificially inflated prices for DeFi Technologies securities, Defendants sold tens-of-millions of the Company's common shares, as well as warrants to purchase tens-of-millions of the Company's common shares, to institutional investors via the Offering in September 2025 for gross proceeds to the Company of ***$100 million***.

62.    Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

63.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise

acquired DeFi Technologies securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

64. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, DeFi Technologies securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by DeFi Technologies or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

65. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

66. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

67. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of DeFi Technologies;

- whether the Individual Defendants caused DeFi Technologies to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of DeFi Technologies securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

68.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

69.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- DeFi Technologies securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold DeFi Technologies securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

70.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

71.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

72.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

73.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

74.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of DeFi Technologies

securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire DeFi Technologies securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

75.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for DeFi Technologies securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about DeFi Technologies' finances and business prospects.

76.    By virtue of their positions at DeFi Technologies, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

77.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers

and/or directors of DeFi Technologies, the Individual Defendants had knowledge of the details of DeFi Technologies' internal affairs.

78.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of DeFi Technologies.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to DeFi Technologies' businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of DeFi Technologies securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning DeFi Technologies' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired DeFi Technologies securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

79.    During the Class Period, DeFi Technologies securities were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of DeFi Technologies securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.   At the time of the purchases and/or acquisitions by Plaintiff and

the Class, the true value of DeFi Technologies securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of DeFi Technologies securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

80.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

81.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

82.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83.     During the Class Period, the Individual Defendants participated in the operation and management of DeFi Technologies, and conducted and participated, directly and indirectly, in the conduct of DeFi Technologies' business affairs.  Because of their senior positions, they knew the adverse non-public information about DeFi Technologies' misstatement of income and expenses and false financial statements.

84.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to DeFi

Technologies' financial condition and results of operations, and to correct promptly any public statements issued by DeFi Technologies which had become materially false or misleading.

85.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which DeFi Technologies disseminated in the marketplace during the Class Period concerning DeFi Technologies' results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause DeFi Technologies to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of DeFi Technologies within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of DeFi Technologies securities.

86.     Each of the Individual Defendants, therefore, acted as a controlling person of DeFi Technologies.  By reason of their senior management positions and/or being directors of DeFi Technologies, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, DeFi Technologies to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of DeFi Technologies and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

87.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by DeFi Technologies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: December 1, 2025                            Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1. I, Neil Fromer, on behalf of Linkedto Partners LLC ("Linkedto Partners"), with authority to bind Linkedto Partners and enter into litigation on its behalf, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against DeFi Technologies Inc. ("DeFi") and authorize the filing of a comparable complaint on behalf of Linkedto Partners.

3. Linkedto Partners did not purchase or acquire DeFi securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act. 4. Linkedto Partners is willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired DeFi securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. The attached sheet lists all of Linkedto Partners' transactions in DeFi securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, Linkedto Partners has not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7. Linkedto Partners agrees not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond its pro rata share of any recovery, except such

reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed 11/24/25**
**(Date)**

**(Signature)**

**Neil Fromer,  Principal (Title)**
**On behalf of**
**Linkedto Partners LLC**

**DeFi Technologies Inc. (DEFT)**                                              **Linkedto Partners LLC**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/14/2025 | 1,000 | $4.4000 |
| Purchase/Acquisition | 5/14/2025 | 425 | $4.3500 |
| Purchase/Acquisition | 5/14/2025 | 250 | $4.2695 |
| Purchase/Acquisition | 5/14/2025 | 250 | $4.2595 |
| Purchase/Acquisition | 5/14/2025 | 200 | $4.1850 |
| Purchase/Acquisition | 5/14/2025 | 450 | $3.9666 |
| Purchase/Acquisition | 5/14/2025 | 350 | $3.8764 |
| Purchase/Acquisition | 5/14/2025 | 300 | $3.8378 |
| Purchase/Acquisition | 5/14/2025 | 300 | $3.8389 |
| Purchase/Acquisition | 5/14/2025 | 200 | $3.8066 |
| Purchase/Acquisition | 5/15/2025 | 300 | $3.9000 |
| Purchase/Acquisition | 5/15/2025 | 500 | $3.7650 |
| Purchase/Acquisition | 5/15/2025 | 300 | $3.7516 |
| Purchase/Acquisition | 5/16/2025 | 300 | $3.8800 |
| Purchase/Acquisition | 5/16/2025 | 375 | $3.8311 |
| Purchase/Acquisition | 5/16/2025 | 250 | $3.8100 |
| Purchase/Acquisition | 5/16/2025 | 300 | $3.7951 |
| Purchase/Acquisition | 5/16/2025 | 300 | $3.8030 |
| Purchase/Acquisition | 5/19/2025 | 335 | $3.5800 |
| Purchase/Acquisition | 5/19/2025 | 407 | $3.6800 |
| Purchase/Acquisition | 5/19/2025 | 266 | $3.7500 |
| Purchase/Acquisition | 5/20/2025 | 350 | $3.7165 |
| Purchase/Acquisition | 5/20/2025 | 300 | $3.7449 |
| Purchase/Acquisition | 5/21/2025 | 288 | $3.4700 |
| Purchase/Acquisition | 5/21/2025 | 250 | $3.5100 |
| Purchase/Acquisition | 5/21/2025 | 427 | $3.4900 |
| Purchase/Acquisition | 5/21/2025 | 563 | $3.5450 |
| Purchase/Acquisition | 5/21/2025 | 418 | $3.5791 |
| Purchase/Acquisition | 5/21/2025 | 563 | $3.5400 |
| Purchase/Acquisition | 5/21/2025 | 555 | $3.5700 |
| Purchase/Acquisition | 5/21/2025 | 498 | $3.5900 |
| Purchase/Acquisition | 5/22/2025 | 200 | $3.6100 |
| Purchase/Acquisition | 5/23/2025 | 280 | $3.5700 |
| Purchase/Acquisition | 5/23/2025 | 277 | $3.6000 |
| Purchase/Acquisition | 5/23/2025 | 588 | $3.4500 |
| Purchase/Acquisition | 5/28/2025 | 277 | $3.6000 |
| Purchase/Acquisition | 5/29/2025 | 441 | $3.3965 |
| Purchase/Acquisition | 5/29/2025 | 439 | $3.4094 |
| Purchase/Acquisition | 5/29/2025 | 1,035 | $3.3750 |
| Purchase/Acquisition | 5/29/2025 | 1,461 | $3.4130 |
| Purchase/Acquisition | 5/29/2025 | 418 | $3.5750 |
| Purchase/Acquisition | 5/30/2025 | 455 | $3.2888 |
| Purchase/Acquisition | 5/30/2025 | 361 | $3.3178 |
| Purchase/Acquisition | 5/30/2025 | 449 | $3.3300 |
| Purchase/Acquisition | 5/30/2025 | 449 | $3.3400 |
| Purchase/Acquisition | 5/30/2025 | 445 | $3.3650 |
| Purchase/Acquisition | 5/30/2025 | 446 | $3.3550 |
| Purchase/Acquisition | 5/30/2025 | 442 | $3.3804 |
| Purchase/Acquisition | 6/2/2025 | 347 | $3.4300 |
| Purchase/Acquisition | 6/3/2025 | 356 | $3.3604 |

**DeFi Technologies Inc. (DEFT)**                                    **Linkedto Partners LLC**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 6/3/2025 | 443 | $3.3752 |
| Purchase/Acquisition | 6/4/2025 | 294 | $3.3800 |
| Purchase/Acquisition | 6/4/2025 | 294 | $3.3865 |
| Purchase/Acquisition | 6/5/2025 | 645 | $3.1000 |
| Purchase/Acquisition | 6/5/2025 | 580 | $3.0900 |
| Purchase/Acquisition | 6/5/2025 | 441 | $3.1693 |
| Purchase/Acquisition | 6/5/2025 | 473 | $3.1700 |
| Purchase/Acquisition | 6/5/2025 | 569 | $3.1400 |
| Purchase/Acquisition | 6/5/2025 | 532 | $3.1795 |
| Purchase/Acquisition | 6/5/2025 | 403 | $3.2065 |
| Purchase/Acquisition | 6/5/2025 | 557 | $3.2200 |
| Purchase/Acquisition | 6/5/2025 | 425 | $3.2800 |
| Purchase/Acquisition | 6/5/2025 | 395 | $3.2900 |
| Purchase/Acquisition | 6/5/2025 | 393 | $3.3000 |
| Purchase/Acquisition | 6/6/2025 | 424 | $3.0600 |
| Purchase/Acquisition | 6/9/2025 | 150 | $3.3300 |
| Purchase/Acquisition | 6/10/2025 | 304 | $3.2700 |
| Purchase/Acquisition | 6/10/2025 | 152 | $3.2700 |
| Purchase/Acquisition | 6/10/2025 | 305 | $3.2700 |
| Purchase/Acquisition | 6/10/2025 | 304 | $3.2730 |
| Purchase/Acquisition | 6/10/2025 | 151 | $3.3052 |
| Purchase/Acquisition | 6/11/2025 | 318 | $3.1200 |
| Purchase/Acquisition | 6/11/2025 | 477 | $3.1350 |
| Purchase/Acquisition | 6/11/2025 | 316 | $3.1500 |
| Purchase/Acquisition | 6/11/2025 | 158 | $3.1550 |
| Purchase/Acquisition | 6/11/2025 | 310 | $3.2165 |
| Purchase/Acquisition | 6/12/2025 | 404 | $2.9600 |
| Purchase/Acquisition | 6/12/2025 | 505 | $2.9500 |
| Purchase/Acquisition | 6/12/2025 | 506 | $2.9450 |
| Purchase/Acquisition | 6/12/2025 | 331 | $3.0199 |
| Purchase/Acquisition | 6/12/2025 | 333 | $3.0200 |
| Purchase/Acquisition | 6/13/2025 | 359 | $2.7700 |
| Purchase/Acquisition | 6/13/2025 | 354 | $2.8150 |
| Purchase/Acquisition | 6/13/2025 | 352 | $2.8400 |
| Purchase/Acquisition | 6/13/2025 | 347 | $2.8800 |
| Purchase/Acquisition | 6/16/2025 | 200 | $2.7850 |
| Purchase/Acquisition | 6/16/2025 | 100 | $2.8400 |
| Purchase/Acquisition | 6/27/2025 | 543 | $2.7500 |
| Purchase/Acquisition | 6/27/2025 | 353 | $2.8200 |
| Purchase/Acquisition | 6/27/2025 | 354 | $2.8100 |
| Purchase/Acquisition | 6/27/2025 | 699 | $2.8534 |
| Purchase/Acquisition | 7/2/2025 | 178 | $2.7950 |
| Purchase/Acquisition | 7/7/2025 | 70 | $2.8067 |
| Purchase/Acquisition | 7/7/2025 | 5 | $2.8150 |
| Purchase/Acquisition | 7/7/2025 | 2 | $2.8350 |
| Purchase/Acquisition | 7/9/2025 | 100 | $2.8400 |
| Purchase/Acquisition | 7/10/2025 | 5 | $2.8200 |
| Purchase/Acquisition | 7/22/2025 | 160 | $3.1100 |
| Purchase/Acquisition | 7/22/2025 | 189 | $3.1600 |
| Purchase/Acquisition | 7/24/2025 | 133 | $2.9850 |

**DeFi Technologies Inc. (DEFT)**                                              **Linkedto Partners LLC**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 7/24/2025 | 167 | $2.9793 |
| Purchase/Acquisition | 7/25/2025 | 149 | $2.8467 |
| Purchase/Acquisition | 7/25/2025 | 140 | $2.8400 |
| Purchase/Acquisition | 7/25/2025 | 160 | $2.7850 |
| Purchase/Acquisition | 7/25/2025 | 156 | $2.8600 |
| Purchase/Acquisition | 7/25/2025 | 208 | $2.8750 |
| Purchase/Acquisition | 7/29/2025 | 160 | $2.8089 |
| Purchase/Acquisition | 7/29/2025 | 160 | $2.8067 |
| Purchase/Acquisition | 7/29/2025 | 160 | $2.7952 |
| Purchase/Acquisition | 7/29/2025 | 155 | $2.8800 |
| Purchase/Acquisition | 7/31/2025 | 182 | $2.7350 |
| Purchase/Acquisition | 7/31/2025 | 161 | $2.7750 |
| Purchase/Acquisition | 8/1/2025 | 135 | $2.5850 |
| Purchase/Acquisition | 8/1/2025 | 114 | $2.6250 |
| Purchase/Acquisition | 8/1/2025 | 152 | $2.6200 |
| Purchase/Acquisition | 8/5/2025 | 115 | $2.5899 |
| Purchase/Acquisition | 8/6/2025 | 178 | $2.5150 |
| Purchase/Acquisition | 8/6/2025 | 148 | $2.5300 |
| Purchase/Acquisition | 8/8/2025 | 155 | $2.5692 |
| Purchase/Acquisition | 8/12/2025 | 60 | $2.4950 |
| Purchase/Acquisition | 8/15/2025 | 21 | $2.3099 |
| Purchase/Acquisition | 8/15/2025 | 100 | $2.3099 |
| Purchase/Acquisition | 8/15/2025 | 105 | $2.3599 |
| Purchase/Acquisition | 8/15/2025 | 82 | $2.4072 |
| Purchase/Acquisition | 8/19/2025 | 138 | $2.1650 |
| Purchase/Acquisition | 8/19/2025 | 228 | $2.1882 |
| Purchase/Acquisition | 8/19/2025 | 104 | $2.1550 |
| Purchase/Acquisition | 8/19/2025 | 92 | $2.1599 |
| Purchase/Acquisition | 8/19/2025 | 258 | $2.1600 |
| Purchase/Acquisition | 8/19/2025 | 178 | $2.2390 |
| Purchase/Acquisition | 8/26/2025 | 104 | $2.1474 |
| Purchase/Acquisition | 8/28/2025 | 116 | $2.1375 |
| Purchase/Acquisition | 8/29/2025 | 95 | $2.0972 |
| Purchase/Acquisition | 9/3/2025 | 48 | $2.0572 |
| Purchase/Acquisition | 9/3/2025 | 9 | $2.0699 |
| Purchase/Acquisition | 9/4/2025 | 50 | $1.9872 |
| Purchase/Acquisition | 9/4/2025 | 100 | $1.9951 |
| Purchase/Acquisition | 9/4/2025 | 100 | $1.9951 |
| Purchase/Acquisition | 9/4/2025 | 75 | $1.9999 |
| Purchase/Acquisition | 9/16/2025 | 97 | $2.5550 |
| Purchase/Acquisition | 9/19/2025 | 2 | $2.4762 |
| Purchase/Acquisition | 9/22/2025 | 10 | $2.3581 |
| Purchase/Acquisition | 9/25/2025 | 47 | $2.1162 |
| Purchase/Acquisition | 9/25/2025 | 70 | $2.1199 |
| Purchase/Acquisition | 9/25/2025 | 83 | $2.0962 |
| Purchase/Acquisition | 9/25/2025 | 120 | $2.0950 |
| Purchase/Acquisition | 9/25/2025 | 32 | $2.1262 |
| Purchase/Acquisition | 9/25/2025 | 58 | $2.1450 |
| Purchase/Acquisition | 9/25/2025 | 56 | $2.1376 |
| Purchase/Acquisition | 9/25/2025 | 50 | $2.1675 |

**DeFi Technologies Inc. (DEFT)**                                    **Linkedto Partners LLC**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 9/25/2025 | 46 | $2.1350 |
| Purchase/Acquisition | 9/25/2025 | 39 | $2.1150 |
| Purchase/Acquisition | 9/25/2025 | 32 | $2.1500 |
| Purchase/Acquisition | 9/25/2025 | 45 | $2.2000 |
| Purchase/Acquisition | 9/26/2025 | 47 | $2.1074 |
| Purchase/Acquisition | 9/30/2025 | 19 | $2.0150 |
| Purchase/Acquisition | 9/30/2025 | 24 | $2.0150 |
| Purchase/Acquisition | 9/30/2025 | 25 | $2.0350 |
| Purchase/Acquisition | 9/30/2025 | 24 | $2.0399 |
| Purchase/Acquisition | 9/30/2025 | 24 | $2.0450 |
| Purchase/Acquisition | 9/30/2025 | 4 | $2.0550 |
| Purchase/Acquisition | 10/1/2025 | 2 | $2.0799 |
| Purchase/Acquisition | 10/1/2025 | 2 | $2.0800 |
| Purchase/Acquisition | 10/1/2025 | 2 | $2.0800 |
| Purchase/Acquisition | 10/1/2025 | 2 | $2.0862 |
| Purchase/Acquisition | 10/9/2025 | 23 | $2.1482 |
| Purchase/Acquisition | 10/10/2025 | 36 | $2.0550 |
| Purchase/Acquisition | 10/10/2025 | 60 | $2.0699 |
| Purchase/Acquisition | 10/10/2025 | 59 | $2.0850 |
| Purchase/Acquisition | 10/15/2025 | 52 | $2.0758 |
| Purchase/Acquisition | 10/20/2025 | 127 | $2.1500 |
| Purchase/Acquisition | 10/22/2025 | 25 | $1.9750 |
| Purchase/Acquisition | 10/22/2025 | 65 | $1.9850 |
| Purchase/Acquisition | 10/22/2025 | 77 | $2.0099 |
| Purchase/Acquisition | 10/22/2025 | 50 | $1.9950 |
| Purchase/Acquisition | 10/23/2025 | 87 | $1.9899 |
| Purchase/Acquisition | 10/23/2025 | 6 | $1.9800 |
| Purchase/Acquisition | 10/28/2025 | 24 | $2.0058 |
| Purchase/Acquisition | 10/28/2025 | 42 | $2.0160 |
| Purchase/Acquisition | 10/28/2025 | 39 | $2.0250 |
| Purchase/Acquisition | 10/28/2025 | 35 | $2.0300 |
| Purchase/Acquisition | 10/29/2025 | 23 | $1.9250 |
| Purchase/Acquisition | 10/29/2025 | 64 | $1.9358 |
| Purchase/Acquisition | 10/29/2025 | 35 | $1.9552 |
| Purchase/Acquisition | 10/29/2025 | 101 | $1.9655 |
| Purchase/Acquisition | 10/30/2025 | 16 | $1.7799 |
| Purchase/Acquisition | 10/30/2025 | 83 | $1.7999 |
| Purchase/Acquisition | 10/30/2025 | 97 | $1.7950 |
| Purchase/Acquisition | 10/30/2025 | 8 | $1.7968 |
| Purchase/Acquisition | 10/30/2025 | 35 | $1.8258 |
| Purchase/Acquisition | 11/4/2025 | 96 | $1.7500 |
| Purchase/Acquisition | 11/4/2025 | 111 | $1.7800 |
| Purchase/Acquisition | 11/5/2025 | 43 | $1.7299 |
| Purchase/Acquisition | 11/6/2025 | 15 | $1.6378 |
| Purchase/Acquisition | 11/6/2025 | 26 | $1.6999 |
| Purchase/Acquisition | 11/11/2025 | 29 | $1.6899 |
| Purchase/Acquisition | 11/13/2025 | 3 | $1.4682 |
| Purchase/Acquisition | 11/13/2025 | 15 | $1.5150 |
| Purchase/Acquisition | 11/14/2025 | 44 | $1.2282 |
| Purchase/Acquisition | 11/14/2025 | 199 | $1.2285 |