UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
LINKEDTO PARTNERS LLC, Individually
and on Behalf of All Others Similarly Situated,

        Plaintiff,

        -against-

DEFI TECHNOLOGIES INC., OLIVIER
ROUSSY NEWTON, PAUL BOZOKI, and
STEFAN HANSSEN,

        Defendants.

------------------------------------------------------------- X

**MEMORANDUM & ORDER**
25-CV-6637 (NRM)(SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

Plaintiff Linkedto Partners LLC brings this putative securities class action against Defendants DeFi Technologies Inc. and its executives Olivier Roussy Newton, Paul Bozoki, and Stefan Hanssen. Plaintiff alleges, on behalf of itself and all others similarly situated who acquired DeFi Technologies securities between May 12 and November 14, 2025, that Defendants made false and misleading statements about DeFi Technologies' prospects in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder.

Currently pending before the undersigned, on referral from the Honorable Nina R. Morrison, United States District Judge, are motions from putative class members Dave Marcon, Justin Tan Xin Rong, Jaime Romero, and Linkedto Partners seeking to be appointed lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). For the reasons explained below, the Court grants Mr. Romero's motion and denies Mr. Tan, Mr. Marcon, and Linkedto Partners' motions.

**FACTUAL & PROCEDURAL BACKGROUND**

DeFi Technologies is a Toronto-based financial technology company founded in 2020.[1] (Compl., Dkt. No. 1 ¶ 3.)  The company uses blockchain technology to develop exchange-traded products and allow investors to transact with cryptocurrencies in a decentralized market.  (*See id.* ¶ 2.)  Revenue is generated through asset management and performance-based fees and trading activities.  (*See id.* ¶¶ 2, 4–5.)[2]

DeFi Technologies publicly listed its stock on the Nasdaq Stock Market on May 12, 2025. (*Id.* ¶ 7.)  According to the Complaint, DeFi's financial reports made throughout 2025 were materially false and misleading because they understated or failed to disclose various risks, including the effects of competition in the market and delays in some key revenue drivers.  (*See id.* ¶ 10.)  The Complaint alleges that when DeFi Technologies disclosed those risks in two November 2025 press releases, the company's stock price fell.  (*See id.* ¶¶ 11–15.)

Plaintiff Linkedto Partners initiated this action by filing the Complaint on December 1, 2025.  On the same day, Plaintiff published an article in *ACCESS Newswire* announcing it had filed this action and advising investors in DeFi Technologies securities that, if they intended to seek to be appointed lead plaintiff pursuant to the PSLRA, they should file their motions by January 30, 2026.  (*See* Press Release, Dkt. No. 12-5.)  On that day, four putative class members filed such motions:  (i) Dave Marcon and his counsel Levi & Korsinsky, LLP; (ii) Justin Tan Xin Rong and his counsel Kahn Swick & Foti, LLC; (iii) Jaime Romero and his counsel The Rosen

---

[1]  Formerly known as Valour Inc., DeFi Technologies adopted its current name in July 2023.  (Compl. ¶ 3.)

[2]  *See also Investor Presentation* (December 2025), https://downloads.ctfassets.net/yite7 zc9v1g4/6RsWY4CKuPrJLwKwWfoZlk/ec481c4e4e7014dff632e6dfd61dbbab/DEFI_Investor_ Deck_DEC-25_INSTI.pdf.

Law Firm, PA; and (iv) Linkedto Partners and its counsel Pomerantz LLP. (*See* Motions, Dkt. Nos. 6–12.)

Mr. Marcon and Linkedto Partners subsequently filed notices informing the Court they would not oppose the other movants' motions and acknowledging they did not possess the largest financial interest in the relief sought by the putative class—a critical factor in selecting a lead plaintiff. (*See* Marcon Notice, Dkt. No. 13; Linkedto Notice, Dkt. No 15; *see also infra* p. 5) Mr. Marcon's notice specified his decision not to oppose should not affect his ability to serve as lead plaintiff "should the need arise." (Marcon Notice p. 2.)

Mr. Romero and Mr. Tan each oppose the others' motion. Mr. Romero alleges that, as the movant with the largest financial interest, he is the most adequate lead plaintiff. (*See* Romero Opp. Mem., Dkt. No. 14 pp. 3–6.) Mr. Tan counters that Mr. Romero did not properly calculate his losses according to the PSLRA's damages limitation, and that Mr. Romero should not lead the class because he has a criminal record. (*See* Tan Opp. Mem., Dkt. No. 16 pp. 2–8.) Based on a background report he conducted using Westlaw's public record search tool, Mr. Tan claims Mr. Romero was charged with three fraud-based felonies and a misdemeanor in Florida in 1992, and a prostitution-related misdemeanor in Texas in 2013. (*See id.* Ex. D, Dkt. No. 16-5.)

In reply, Mr. Romero's asserts that calculations of financial interest at the lead plaintiff stage need not be limited by the PSLRA's damages calculation methodology. (*See* Romero Reply, Dkt. No. 18 pp. 3–5.) He also explains his criminal conduct occurred long ago when he was 19 years old, no charges resulted in a conviction, and identifies cases where courts appointed lead plaintiffs with similar or more serious criminal records. (*See id.* pp. 5–7.) When given an opportunity by the Court to expand on his response, Mr. Romero concedes his "recollection is limited," and he does not remember the exact number of charges he faced in connection with the

1992 Florida incident. (*See* Romero Decl., Dkt. No. 27 p. 2) But he confirms counsel's representation that those charges were all related to an attempt to obtain a credit card to purchase toys at Toys R Us, and that he was not convicted. (*See id.*; *see also* Tr: at 5:24–7:12, 25:10–29:10, 33:22–34:12.) He explains all charges were dropped after he completed a pre-trial intervention diversionary program. (*See* Romero Decl. p. 2.) As for the 2013 Texas charge, he similarly affirms he was not convicted and all charges were dropped through another diversionary program. (*See id.* pp. 2–3.) Mr. Tan responds that Mr. Romero's subsequent declaration "raises more questions than it answers" and reasserts that Mr. Romero's history raises questions regarding his character and poses risks should he be appointed to lead the class. (*See* Tan Letter Response, Dkt. No. 28 p. 1.)

Despite his prior notice of non-opposition, Mr. Marcon filed a reply in support of his original motion asserting that, if Mr. Romero is found inadequate to serve as lead plaintiff, Mr. Marcon should be appointed because he is the movant with the next largest financial interest. (*See* Marcon Reply, Dkt. No. 20.) However, Mr. Marcon's counsel ultimately concedes that he does not believe the prior criminal charges against Mr. Romero constitute a basis not to appoint him lead plaintiff. (*See* Tr. at 23:13–24:17.) Mr. Tan contends that Mr. Marcon also improperly calculated his financial loss pursuant to the PSLRA, and that Mr. Marcon abandoned his motion. (*See* Tan Supp. Opp., Dkt. No. 24 pp. 2–10.)

The Court heard argument on the competing motions on February 27, 2026. (*See* Transcript of Feb. 27, 2026 Conference ("Tr."), Dkt. No. 26.)

**LEGAL STANDARD**

The PSLRA establishes the process for selecting a lead plaintiff in private securities suits arising under the Exchange Act and brought on behalf of a putative class. *See* 15 U.S.C. § 78u-

4(a)(1).  First, within 20 days of initiating such an action, the plaintiff must publish in a widely circulated national business-oriented publication a notice advising putative class members of the action and their right to file a motion for appointment as lead plaintiff no later than 60 days after the notice.  *See id.* (a)(3)(A)(i).  After receiving those motions and within 90 days of the notice, the PSLRA requires a court to consider any such motions and then "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  *Id.* (a)(3)(B)(i).

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that (i) filed the complaint or moved to be appointed lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23.  *Id.* (a)(3)(B)(iii)(I)(aa)–(cc).  Determining which movant has the largest financial interest takes account of multiple factors, with amount of financial loss being the most significant.  *See Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130, 2017 WL 5256769, at*1 (S.D.N.Y. Nov. 13, 2017); *see also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (recognizing financial interest may be determined by "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period."), *adh'd to on recons*, 181 F.R.D. 218.

As for the Rule 23 requirements, a court considers only whether the proposed plaintiff has made a preliminary showing that two requirements—typicality and adequacy—are satisfied.  *See Chitturi v. Kingold Jewelry, Inc.*, 20-CV-2886, 2020 WL 8225336, at *5 (E.D.N.Y. Dec. 22, 2020).  "To establish typicality under Rule 23(a)(3), the party [] must show that 'each class member's claim arises from the same course of events and each class member makes similar legal

arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Adequacy "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings*, 574 F.3d at 35 (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). Additionally, "the lead plaintiff should have a 'sufficient interest in the outcome to ensure vigorous advocacy.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 413 (S.D.N.Y. 2004) (quoting *In re Olsten*, 3 F. Supp. 2d at 296).

"[I]f the court is satisfied that there is a presumptively adequate lead plaintiff, the court may then determine whether this presumption has been rebutted 'upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Somogyi v. Organogenesis Holdings Inc.*, 623 F. Supp. 3d 24, 29 (E.D.N.Y. 2022) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). If the presumption is not rebutted, the presumptively most adequate plaintiff is appointed to lead the class.

The Court then considers whether that individual's choice of counsel should represent the class as lead counsel. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v). Courts defer to a plaintiff's selection of counsel "and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." *Xiangdong Chen v. X. Fin.*, 19-CV-6908, 2020 WL 2478643, at *5 (E.D.N.Y. May 13, 2020) (quoting *Bray v. Frontier Commc'ns Corp.*, 17-CV-1617, 2018 WL 525485, at *11 (D. Conn. Jan. 18, 2018)).

**DISCUSSION**

The Court must decide whether to appoint Mr. Tan, Mr. Romero, or Mr. Marcon as lead plaintiff. The Court begins by addressing whether the PSLRA's procedural notice and timeliness requirements were met. Next, the Court evaluates which movant has the largest financial interest, otherwise meets Rule 23's adequacy and typicality requirements, and thus is the presumed plaintiff. After determining the presumptive lead plaintiff, the Court considers any arguments to rebut that presumption. The Court concludes its analysis by evaluating the prevailing movant's selection of counsel.

## I.     Notice & Timeliness

Plaintiff Linkedto Partners met the PSLRA's notice requirement by publishing the *ACCESS Newswire* article on the same day it filed the Complaint. (*See* Press Release.) All four parties timely moved to be appointed lead plaintiff by filing their motions on January 30, 2026, the final day of the PSLRA's 60-day time period. (*See* Motions, Dkt. Nos. 6–12.)

## II.    Largest Financial Interest

The Court finds Mr. Romero has the largest financial interest in the relief sought by the class. The claimed financial loss amounts of each movant, from greatest to least, are:

| | |
|---|---|
| Jaime Romero | $721,107.07 |
| Dave Marcon | $477,945.96 |
| Justin Tan Xin Rong | $203,184.62 |
| Linkedto Partners | $96,798 |

(*See* Motions, Dkt. Nos. 6–12.) Linkedto Partners concedes it does not have the largest financial loss. (*See* Linkedto Notice.) That leaves only Mr. Romero, Mr. Marcon, and Mr. Tan in consideration.

Mr. Tan challenges Mr. Romero's calculations, asserting that by failing to properly apply the PSLA's 90-day lookback period, Mr. Romero improperly overstated his losses by $115,693.07.

7

(*See* Tan Opp. Mem. p. 4.)  Mr. Romero counters that courts are split on whether the methodology for determining a proposed lead plaintiff's financial interest in the relief sought is subject to the same limitations on damages under the PSLA.  (*See* Romero Reply pp. 3–5.)  Either way, Mr. Romero claims—and Mr. Tan essentially concedes that—Mr. Romero's financial loss is still the highest of the four movants no matter the calculation method.  (*See id*; Tr. at 18:18–19:14.)

The Court agrees "[n]othing in the PSLRA requires that a party provide proof of losses in a particular manner." *Murphy v. Argo Blockchain plc*, 683 F. Supp. 3d 211, 218 (E.D.N.Y. 2023).  Indeed, there is no need for the Court to wade into these complex calculations or choose one method over another.  Even accepting Mr. Tan's argument and reducing Mr. Romero's losses by the allegedly overstated amount, Mr. Romero still maintains the largest financial loss of the four movants at $605,404—nearly $130,000 higher than the next highest claimed amount by Mr. Marcon.  As amount of financial loss is the most significant factor in determining whether a potential lead plaintiff has the largest financial interest, this element of the PSLRA's process weighs definitively in favor of Mr. Romero.  *See Nurlybaev*, 2017 WL 5256769, at* 1.

## III.    Rule 23 Adequacy & Typicality

The Court finds Mr. Romero also meets Rule 23's adequacy and typicality requirements. With regard to adequacy, there is no indication in the record before the Court that Mr. Romero has interests antagonistic to the putative class, and the extent of his losses confirms he is motivated to advocate this case.  (*See* Romero Decl. p. 3.)  His chosen counsel, The Rosen Law Firm, is competent and experienced.  (*See* Romero Mem. Ex. D, Dkt. No. 11-4.)  Typicality is satisfied because Mr. Romero's claims arise from the same course of events and legal arguments as members of the putative class—*i.e.*, that Defendants' allegedly misleading statements caused him economic loss.  (*Compare* Romero Mem. p. 5 *with* Compl. ¶¶ 72–87.)

Because he has both the largest financial interest and meets the Rule 23 requirements, the Court finds Mr. Romero is the presumed most adequate lead plaintiff pursuant to the PSLRA.

## IV.    Rebuttal Evidence

Having found the presumption favors Mr. Romero, he must be appointed lead plaintiff unless—and only unless—Mr. Tan presents one of two types of proof:  (i) proof Mr. Romero will not fairly and adequately protect the interests of the class; or (ii) proof Mr. Romero is subject to unique defenses that render him incapable of adequately representing the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Mr. Tan argues that Mr. Romero's criminal history "rais[es] serious questions about his judgment and candor and subjects him to unique defenses," and "shows a lack of . . . judgment, care, and diligence."  (Tan Reply, Dkt. No. 19 p. 1.)  The Court appreciates that Mr. Tan brought Mr. Romero's criminal history to potential class members' attention and agrees a history of fraud raises genuine concerns about Mr. Romero's fitness to represent the proposed class.  But as an initial matter, "[m]ost courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical, or even illegal conduct."  William B. Rubenstein, 1 Newberg on Class Actions § 3.68 (5th ed. 2019) (collecting cases).

Most importantly, Mr. Tan's assertions do not establish one of the two showings required to overcome the presumption in Mr. Romero's favor.  First, Mr. Tan does not argue, nor does the Court find, that Mr. Romero's criminal record affects his capability to protect the class's interests. To be sure, Mr. Romero's persistence in his bid to be appointed lead plaintiff—even after his prior indiscretions were aired in a public proceeding—indicates his strong will and ability to weather future storms in this litigation.

9

Similarly, Mr. Romero's history does not prove he will be subject to any unique defenses. This matter is a securities fraud class action about alleged misrepresentations DeFi Technologies made regarding its performance during a defined period. (*See* Compl. ¶¶ 72–87.) Mr. Romero's criminal record is not relevant to any of those allegations, so it will not be part of discovery. *See* Fed. R. Civ. P. 26(b)(1). Even if any facts about his record become part of discovery, they will be subject to relevance objections at trial. *See* Fed. R. Ev. 401–02.

Any facts regarding the alleged prior criminal conduct also will not be admissible to attack Mr. Romero's credibility nor character because his charges are more than ten years old and did not result in conviction. S*ee id.* 404(b) (prohibiting introduction of evidence in a civil proceeding regarding criminal conduct that occurred over ten years prior and did not result in a conviction to prove a lack of credibility or character). Despite the parties' dispute over whether any charges ultimately resulted in convictions, the Court credits Mr. Romero and counsel's affirmations to the contrary. (*See* Romero Decl. ¶¶ 5–11; Tr. at 5:14–8:8; 24:18–27:3; 33:22–34:12.) Even if Mr. Romero was convicted of any of these charges, it's unlikely they would subject him to unique defenses because it would be "a stretch to say that they remain strongly probative of a lack of personal integrity." *White v. E-Loan, Inc.*, 05-CV-02080-SI, 2006 WL 2411420, at *3 (N.D. Cal. Aug. 18, 2006) (refusing to disqualify presumptive lead plaintiff as inadequate in consumer credit class action when he had been convicted and served prison time for four separate robberies committed over 30 years prior).

Mr. Tan counters admissibility is irrelevant because "even ultimately unsuccessful unique defenses may 'divert attention from the substance of the basic claim,' and class members are 'entitled to be represented by someone unhindered by' such distractions." (Tan Reply pp. 4–5) (quoting *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 20-CIV-4420, 2020 WL 5548856, at *7

(S.D.N.Y. Sept. 16, 2020)).  But evidence to rebut the presumption in favor of Mr. Romero must also be more than speculative and hypothetical.  *See Huang v. Airmedia Grp. Inc.*, 15-CV-4966, 2015 WL 10846763 at \*2 (S.D.N.Y. Nov. 10, 2015) (quoting *In re Olsten*, 3 F. Supp. 2d at 296). As it does in every case, the Court can apply procedural discovery and evidentiary rules to conclude Mr. Romero's charges would be inadmissible without significant speculation.  But the Court declines to speculate further how any hypothetical evidentiary disputes regarding Mr. Romero's record might serve as a distraction.

Notably, Mr. Marcon—the movant with the second largest claimed financial loss and thus the most to gain if Mr. Romero were to be eliminated from consideration—says Mr. Romero's criminal history should not disqualify him.  (*See* Tr. at 23:13–24:17.)  Mr. Marcon explained at argument that criminal records only disqualify lead plaintiffs when the conduct was "directly on point to the issues in the case," which Mr. Marcon did not find to be the case here.  (*Id.* at 14:10– 15.)  The Court agrees that soliciting sex and carrying out a credit card scam at a toy retailer are dissimilar to falsifying corporate financial reports.  *See, e.g.*, *Chupa v. Armstrong Flooring, Inc.*, 19-CV-9840, 2020 WL 1032420, at \*4 (C.D. Cal. Mar. 2, 2020) (finding movant's twenty-year-old conviction for armed bank robbery too unrelated to issues in securities fraud action to rebut PSLRA's presumption) (collecting cases).

In the end, Mr. Tan's assertions boil down to an argument that Mr. Romero is not an appropriate lead plaintiff because of two sets of criminal charges, the newest of which were raised 13 years ago.  The Court acknowledges that, to the extent those charges are established, the conduct is serious, and the Court's holding here in no way excuses or minimizes that conduct.  Ideally, Mr. Romero would have been more forthcoming about his record either before or once it was discovered by other parties.  And, to be sure, serious criminal conduct has barred individuals from

serving as lead plaintiffs in other cases. *See, e.g.*, *Sneed v. AcelRx Pharms., Inc.*, 21-CV-4353, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021) (finding presumption in favor of class representative rebutted when he embezzled over $900,000 from employers, pled guilty to 14 counts of wire fraud, served 18 months in prison, and did not respond with a declaration after opposing counsel identified his offenses). But without convincing proof that the PSLRA's presumption is rebutted, the Court is reluctant to adopt a rule that might preclude imperfect individuals from enforcing their legal rights. *Cf. Casale v. Kelly*, 257 F.R.D. 396, 412–13 (S.D.N.Y. 2009) (acknowledging named plaintiffs' criminal history and drug use but refusing to bar them from representing class alleging constitutional violations in part because their "characteristics and ailments [were] typical of individuals who tend to be victims of the enforcement of unconstitutionally vague statutes").

Here, Mr. Tan has failed to establish that Mr. Romero's prior conduct is of such a nature that it would impact his ability to represent the class as prohibited by the PSLRA. There is no basis to find that doing so would create "unique defenses," because, even as alleged by Mr. Tan, the evidence of Mr. Romero's prior misconduct is likely to be precluded under the relevant evidentiary rules. *See supra* p. 10. Having found that Mr. Romero is the presumptive lead plaintiff, and that Mr. Tan's proof is insufficient to rebut that presumption, the Court concludes that Mr. Romero should be appointed lead plaintiff.[3]

## V. Selection of Counsel

No party has objected to Mr. Romero's selection of The Rosen Law Firm as lead counsel. Mr. Romero submitted the Firm's resume, which provides a detailed description of the educational

---

[3] Although the Court finds Mr. Marcon adequately reserved his rights to seek appointment as lead plaintiff, the Court does not reach his arguments because the presumption in favor of Mr. Romero was not rebutted.

backgrounds and legal experience of 27 attorneys at the Firm. (*See* Romero Mem. Ex. 4, Dkt. No. 11-4 pp. 1–13.) The Firm has substantial experience litigating securities class actions. Its resume lists multiple securities class actions in this Circuit and others in which it is serving as lead counsel. (*See id.* pp. 21–25.) No purported class members have offered any reason why the Firm should not serve as lead counsel. Accordingly, the Court concludes, as have others, that The Rosen Law Firm is qualified to serve as lead counsel. *See, e.g.*, *Sanchez v. Arrival SA*, 22-CV-172, 2022 WL 20539729, at *9–10 (E.D.N.Y. Apr. 15, 2022) (collecting cases).

## CONCLUSION

For the foregoing reasons, the Court appoints Jaime Romero as lead plaintiff and The Rosen Law Firm as lead class counsel. The motions by Justin Tan Xin Rong and Dave Marcon are denied, and the motion by Linkedto Partners is denied as moot.

**SO ORDERED.**

Dated: Brooklyn, New York
      April 6, 2026

/S/ *SETH D. EICHENHOLTZ*
SETH D. EICHENHOLTZ
United States Magistrate Judge
Eastern District of New York